**CSG law**

CHIESA SHAHINIAN & GIANTOMASI PC

105 Eisenhower Parkway, Roseland, NJ 07068
csglaw.com

LEE VARTAN
Member

lvartan@csglaw.com

O 973.530.2107    F 973.325.1501

November 27, 2025

Honorable Michael A. Shipp
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:  *United States v. Spotts,* Crim. No. 25-519 (MAS)

Dear Judge Shipp:

We write in response to the Government's letter dated November 25, 2025, (ECF No. 21), and the Court's text Order denying the Government's requested adjournment. Given the Government's letter, and the stark admissions made in it just weeks before trial, the Indictment must be dismissed.

The Court's Scheduling Order required the Government to provide "substantially all discovery" and all "exculpatory evidence" by November 19. (ECF No. 19.) The Government's letter admits that the Government violated—and continues to violate—the Court's Order. The letter discusses "material" that the Government "intended to produce to the defendant." Meaning, there is material, unknown in volume, that the defense is without. The letter then identifies "other potentially relevant classified material," again without affixing an amount, which may be discoverable. The Government is explicit: "The Government *cannot complete compliance* with its discovery obligations until the process of reviewing potentially classified material is completed." (emphasis added). That may take "months." The Government offers no explanation why it just made this realization on November 25—after indicting Mr. Spotts on August 27, after filing a motion to continue speedy trial deadlines on September 30, based on its supposed inability to produce discovery, and after this Court's November 19 deadline to substantially complete discovery.

But the November 25 letter is only part of the story of the Government's serial non-compliance in this case. To comply with the Scheduling Order, the Government produced two hard drives to the defense. The hard drives could not be accessed and were sent to an outside vendor. The outside vendor could not access them either. The parties met and conferred, the Government acknowledged the materials that it had produced were

inaccessible, and the Government reproduced both hard drives. It was only yesterday, November 26, that the defense received them. Due to the holiday, it will be days more before the defense can access them. And, according to the Government, there is more to produce still, beyond the "potentially classified information." Again, volume unknown.

So, six weeks from trial, there is: (1) "potentially classified information" of unknown amount that the Government has failed to produce (and presumably won't produce); (2) hard drives presumably containing the bulk of Rule 16 discovery that the defense is still without access to because of the Government's faulty production; and (3) other documents, again of unknown volume, that the Government has failed to produce.

Then there is the failure to produce *Brady* material. The defense sent a letter to the Government on November 4 seeking nineteen specific categories of *Brady* material. The Government didn't respond. On November 19, we sent a second letter reminding the Government of its *Brady* obligations. The Government responded, in sum and substance, you go find it in the "extensive material" that was produced to you. That "extensive material" is largely inaccessible.

Beyond all of this is the curious circumstances under which the Government's most recent letter was filed. On November 25, after the Court-ordered discovery deadlines had passed, the Government sent a letter asking for a 60-day adjournment to review "potentially classified information" that seemingly appeared from nowhere. As the Court held, "the [G]overnment has had years to prepare for this case." (Tr. at 23, ll. 6-7.) The sudden appearance of this new discovery is truly inconceivable. While we don't know the precise amount of classified material, it doesn't appear that we are talking about a handful of stray documents; rather, it appears the Government has—and has had—a cache of classified documents that it is only discovering weeks before trial. How could it possibly be now, after years, and after filing and having the Court deny a motion to treat this case as complex, that the Government has just stumbled upon this cache of "potentially classified information"? How is the Government just learning of this information six weeks from trial?

The Government said how: "turnover in the [U.S. Attorney's] office." (Tr. at 6, l. 17.) The Government continued:

> [T]he [G]overnment charges many more cases than ultimately go to trial, more than 90 percent of cases. I think the number is even higher than that. Most cases don't go to trial. We don't prep for trial in every case pre-charge because that's just simply not practical. … We start preparing for trial usually after pretrial motions, which is what happens in the normal course.

(Tr. at 15, ll. 12-20.) The Government's peak-behind-the-curtain continued: "So, you know, we don't start—until we have a trial date set, we don't start preparing for trial in earnest. That's just not how it ever works." (Tr. at 16, ll. 1-3.) Indeed, the case was still "brand new" to the lead prosecutor weeks after Mr. Spotts had been indicted. (Tr. at 17, l. 9.) It's not "brand new" to Mr. Spotts. Mr. Spotts has been living with this case for years. He proclaimed his innocence to the U.S. Attorney's Office through defense counsel and made express his desire for a speedy trial were he indicted. It is no fault of Mr. Spotts that this case, after years of investigation by the U.S. Attorney's Office, is still somehow "brand new" to the assigned prosecutors.

The Government tried to deny Mr. Spotts his right to a speedy trial by filing a motion to treat this case as complex. The Court rightly rebuffed the Government. The Government then tried again with its November 25 letter, and the Court rebuffed the Government a second time. But the answer is not to make Mr. Spotts choose between his speedy trial rights and access to basic Rule 16 discovery, not to mention *Brady* material. The answer is to dismiss the Indictment.

Mr. Webman was candid and clear with the Court: "[T]here is just no way this trial could have been put together in 70 days, and I think that's plain." (Tr. at 17, ll. 10-11.) If it wasn't before, it is now. Mr. Spotts is without the bulk of Rule 16 discovery. Indeed, he does not even know how much remains to be produced or what is missing. And if the Government's November 25 letter is to be believed, it may take "months" for the Government to produce that Rule 16 discovery. He is also without *Brady* material. Without Rule 16 or *Brady* material, Mr. Spotts cannot adequately prepare for trial.

The facts are, to borrow a word from the Government, "plain." It is "plain" that the Government indicted this matter well before it was prepared to proceed. This cannot be excused. The Government indicted Mr. Spotts but hadn't "prep[ared] for trial … pre-charge because that's simply not practical." "That's just not how it ever works." The Government expected Mr. Spotts to go the way of "more than 90 percent of cases" or at least sign a continuance order. Mr. Spotts refused. Then, the Government accepted a December trial date, at least until it realized "that discovery was going to take a lot longer than [the Government] thought seemed reasonable." (Tr. at 16, ll. 9-11.) The Government's solution was not to dismiss the Indictment until it had "prep[ared]." The Government's solution was to declare the case complex to create delay. The Government knew that it could not produce discovery and be ready for trial in 70 days; Mr. Webman said so. In fact, the Government's original proposed scheduling order set production of Rule 16 discovery for December 31, 2025, (*see* ECF No. 8-2)—more than 70 days from arraignment.

The Court saw the Government's complex case motion for what it was. A ruse. "Lack of diligent preparation," which Mr. Webman admitted to several times on the record, is not a reason to grant an ends of justice continuance. But when the Court denied the

motion, the Government was still unprepared. The fundamental problem remained: "[T]here [was] just no way this trial could [be] put together in 70 days," in part because "the Government *cannot complete compliance* with its discovery obligations" in that time. (emphasis added). That may take "months" according to the Government.

Nothing has changed since the Court determined this matter was not complex and set a trial date in accordance with the law and Mr. Spotts' constitutional rights. Mr. Spotts should not suffer because of the Government's "lack of diligent preparation." The Court found that Mr. Spotts is entitled to a speedy trial.

But he's also entitled to a fair trial. The Government cannot give him one. He is without discovery. He is without *Brady* material. And the Government admits in its November 25 letter that it "cannot complete compliance with its discovery obligations" before January 12. The Speedy Trial Act and Rule 48 require dismissal. And that dismissal should be *with* prejudice. A without prejudice dismissal would reward the Government for its "lack of diligent preparation" by giving it what it always wanted—more time. But whether with prejudice or without, the remedy here is dismissal of the Indictment, and not to make Mr. Spotts choose between his Sixth Amendment rights and his Fifth Amendment rights.

## FACTUAL BACKGROUND

Mr. Spotts was indicted on August 27, 2025. Despite investigating the case for years, the Government was unprepared to proceed. As the Court knows, after Mr. Spotts invoked his right to a speedy trial, the Government filed a motion for a continuance and to designate the case as complex. The motion nodded at the complexity of the charges, but the real basis for the motion was the large volume of discovery and the slow processing times at the Litigation Technology Service Center ("LTSC") in South Carolina. The Court denied the motion, noting, "the [G]overnment has had years to prepare for this case," and "no continuance shall be granted because of a lack of diligent preparation … on the part of the attorney for the [G]overnment." (Tr. at 23, ll. 6-7; 12-14.) The Court set trial for January 12, 2026.

Shortly thereafter, the parties agreed to a Scheduling Order, which the Court entered on November 3, 2025, (ECF No. 19), setting forth a series of intermediate deadlines needed to meet a January trial date. The first critical deadline required the Government to produce (*i*) substantially all discovery required by Federal Rule of Criminal Procedure 16(a)(1) and (*ii*) exculpatory evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, by November 19, 2025.

On November 4, 2025, the defense sent the Government a letter detailing its discovery demands. Specifically, Mr. Spotts demanded production of all discoverable

November 27, 2025
Page 5

materials pursuant to Rule 16(a)(1) and *Brady v. Maryland*, including, but not limited to, nineteen specific categories of discovery.

November 19 has come and gone, and the Government has neither addressed Mr. Spotts' specific discovery requests nor complied with the Scheduling Order. While the Government has purported to make six productions, the bulk of the Government's discovery (over seven million pages) was made in two productions dated November 4, and November 13, 2025 in a format that was inaccessible to the defense and had to be returned to the Government for reproduction.

Upon receiving the two hard drives, CSG's technology and litigation support teams attempted to access them. They could not. The defense hired an e-discovery vendor, Contact Discovery, to access the drives. Contact was likewise unable to access them due to the Trellix encryption program used by LTSC and alerted CSG to the issue on November 19. The following day, the parties and their respective technical support teams met and conferred. The Government's litigation support team acknowledged that Trellix can cause issues outside of the Government's technical environment, particularly with large file sizes. The Government directed the defense to return the drives to the U.S. Attorney's Office in Newark so they could be reproduced in a format accessible to the defense.

It was only yesterday, November 26, that the defense received the discovery required by the Court's Order. Due to the holiday, it will be days more before the defense can access it.

While these significant production problems have prejudiced Mr. Spotts' ability to prepare for trial, they are not the only issues caused by the Government's lack of diligent preparation. First, the Government admits that there is additional outstanding discovery of unknown type and amount that it has not produced and cannot produce to the defense before trial:

> [T]he Government learned on November 21, 2025 that material which it intended to produce to the defendant may contain potentially classified information. The Government is also in the process of reviewing other potentially relevant classified material to determine if it is discoverable. … The Government cannot complete compliance with its discovery obligations until the process of reviewing potentially classified material is completed.

(ECF No. 21.) All of this is startling, of course. What is this material? Where did it come from? How much material is it? Does it include *Brady* material? Why is the Government just revealing this now? The answers though are to some degree academic because the Government admits that it cannot comply with its discovery obligations prior to trial.

Second, the Government has refused to substantively respond to the defense's November 4 discovery letter and refused to identify *Brady* material in the productions that the defense cannot even access. The result is fundamentally unfair.

Third, in conversations with the Government, the Government has alluded to other discovery, meaning non-classified discovery, which remains to be produced. We have asked the Government about the nature and volume of this discovery, but the Government hasn't responded.

Today, just six weeks from trial, (1) the bulk of Rule 16 discovery is totally inaccessible to the defense; (2) the Government has refused to meet its *Brady* obligations; (3) there is a cache of discoverable, potentially classified information of undisclosed type and unknown amount that the Government admits it cannot produce before trial; and (4) there is other discovery, again of unknown type and amount, that the Government has not said when it will produce.

The Court has three options in response to the Government's discovery delinquencies. It can push forward to trial. That would be fundamentally unfair to Mr. Spotts. It could grant the Government additional time. That it has already decided against—twice. Or, it could dismiss the Indictment to preserve Mr. Spotts' right to a speedy and fair trial. The last is the obvious choice. The only question is whether the Court should dismiss the Indictment with prejudice or without. For the reasons argued below, we believe a *with* prejudice dismissal is required. But whether with or without prejudice, the Indictment must be dismissed.

## ARGUMENT

**A.     The Indictment should be dismissed with prejudice because the Government has admitted that it cannot bring this matter to trial in accordance with the Speedy Trial Act.**

On November 25, 2025, one week after the Government's deadline to produce Rule 16 discovery had passed and a mere six weeks until trial, the Government admitted in a letter to the Court that it had not complied with its discovery obligations:

> [T]he Government learned on November 21, 2025 that material which it intended to produce to the defendant may contain potentially classified information. The Government is also in the process of reviewing other potentially relevant classified material to determine if it is discoverable.

(ECF No. 21.) The Government further explained that "litigation under the Classified Information Procedures Act, Title 18, United States Code, Appendix 3, Sections 1-16 ("CIPA"), may be necessary[, and] … may take months." (*Id.*) The Government was

unequivocal: "The Government *cannot complete compliance* with its discovery obligations until the process of reviewing potentially classified material is completed." (emphasis added).

While the Court denied the Government's request for a 60-day adjournment, (*see* ECF No. 22), the Government cannot proceed to trial on January 12, 2026. It's not ready; that the Government admits. A court cannot force a defendant to sacrifice his Fifth Amendment rights for his Sixth Amendment rights. *See United States v. Pitts*, 331 F.R.D. 199, 201 (D.D.C. 2019) (dismissing indictment with prejudice where Government "failed to conduct forensic testing on the firearm recovered during the search, and now cannot obtain those results without violating [defendant's] rights under the Speedy Trial Act, ("Act"), 18 U.S.C. § 3161").

Section 3162 of the Speedy Trial Act controls. The Court denied the Government an ends of justice continuance. The Court then denied the Government's request for an adjournment. The Court has recognized Mr. Spotts' right to go to trial on January 12, but the Government admits that it cannot proceed to trial on that date, at least not without denying Mr. Spotts basic due process. That requires dismissal. Section 3162 is unequivocal. It says the indictment "*shall* be dismissed on motion of the defendant" where the Government cannot bring the defendant to trial in 70 days. (emphasis added). The only question for the Court is whether the dismissal is with prejudice or without.

Section 3162 lists factors for the Court to consider:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162. Considering the § 3162 factors, dismissal with prejudice is required.

The defense does not dispute the seriousness of the charges against Mr. Spotts. However, "the fact that the underlying offense is serious may be outweighed by the other factors." *United States v. Bert*, 814 F.3d 70, 80 (2d Cir. 2016). That is the case here.

*First*, the "facts and circumstances" of the delay in this matter strongly favor a dismissal with prejudice. The Supreme Court has counseled the "facts and circumstances" factor may tip in favor of dismissal with prejudice in situations where the delay is attributable to a "truly neglectful attitude." *United States v. Taylor*, 487 U.S. 326, 338 (1988). That is a very apt description for the Government in this case. After years of

November 27, 2025
Page 8

investigation, and on the eve of the expiration of the statute of limitations[1], the Government indicted Mr. Spotts, but hadn't "prep[ared] for trial." And it wasn't just in this case. It's in every case according to Mr. Webman. According to him, the Government is *never prepared* for trial at the time of indictment. That is, the Government is *never prepared* to honor a defendant's right to a speedy and fair trial. If that is true, and the defense has no reason to doubt Mr. Webman's candid admission, that should shock the Court. It's an on-the-record admission that the U.S. Attorney's Office for the District of New Jersey has a "truly neglectful attitude" to the Speedy Trial Act in this case and every case. And it shows. The Government has produced inaccessible hard drives, blown through Court-ordered deadlines, refused to produce *Brady* material, and just now found a cache of discovery material that it never knew existed, never disclosed, and cannot produce in time for trial.

The Government will no doubt respond that dismissal should be without prejudice because Mr. Webman was "brand new" and the ongoing discovery violations were not purposeful. If that is the Government's position, then Mr. Spotts demands an evidentiary hearing to determine how, after five years of investigation, no one at the U.S. Attorney's Office knew of this "potentially classified information." Maybe it was just negligence due to "turnover" in the U.S. Attorney's Office, but maybe it wasn't. The U.S. Attorney's Office should be compelled to explain.

*Second*, the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice also favors dismissal with prejudice. If the Speedy Trial Act is to have any real bite, there must be consequences for its violation. As analyzed by the Second Circuit in *Bert*:

> It is beyond question that "[d]ismissal without prejudice is not a toothless sanction." *Id*. at 342. But it is equally doubtless that the sanction of dismissal with prejudice has more bite. *See id*. ("It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays."). Although the less severe sanction "imposes some costs on the prosecution and the court," *Zedner v. United States*, 547 U.S. 489, 499 (2006), "the prosecutor may of course seek—and in the great majority of cases will be able to obtain—a new indictment," *id*.; *see also* 18 U.S.C. § 3288 (providing that even if "the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned ... within six calendar months of the date of the dismissal"). Consequently, "if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70–day

---

[1] To be clear, the defense believes the statute of limitations has already expired.

> periods in which to bring the defendant to trial." *Giambrone*, 920 F.2d at 180.
>
> Furthermore, under a regime that limited the more severe sanction exclusively to cases of intentional misconduct, criminal defendants would have little incentive to alert the court to administrative oversights that held no conceivable promise of precluding reprosecution.
>
> *Bert*, 814 F.3d at 82.

As recognized in *Bert,* dismissal with prejudice cannot be used so sparingly as to render the Speedy Trial Act a nullity. If there were ever a case where dismissal with prejudice is required to give "bite" to the Speedy Trial Act, it's this one. The Government indicted this case when it was—by its own stark admission—totally unprepared for trial. When the defense would not acquiesce to a continuance, the Government tried to call the case complex to hide its lack of diligent preparation. It even went so far as to represent to the Court that it could not jump the discovery line in South Carolina, (*see* ECF No. 13, p. 2, n.1), when apparently it turns out that it could (albeit imperfectly, since the hard drives produced were inaccessible). *See* 18 U.S.C. § 3162 (allowing the Court to "punish" an attorney who "makes a statement for the purpose of obtaining a continuance which he knows to be false and which is material to the granting of a continuance"). Anything other than a with prejudice dismissal here would reward the Government for its bad behavior by giving it what it's always wanted, and the Court has twice denied it—more time.

*Third*, there are also significant institutional concerns at play. As Mr. Webman admits, it's just not in this case that the Government disregarded the Speedy Trial Act, it's in every case. The Government is never prepared for trial at the time of indictment according to Mr. Webman. The Government doesn't "start—until we have a trial date set, we don't start preparing for trial in earnest. That's just not how it ever works." (Tr. at 16, ll. 1-3.) It is for that reason that a with prejudice dismissal is required. The Speedy Trial Act is not the U.S. Attorney's to so cavalierly disregard. A with prejudice dismissal here will jolt the U.S. Attorney's Office into action and serve as a reminder that even the Department of Justice must abide the law.

**B.     The Indictment should be dismissed pursuant to Fed. R. Crim. P. 48(b) and the supervisory powers of the Court.**

Rule 48(b) of the Federal Rules of Criminal Procedure provides that a "Court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: ... bringing a defendant to trial." Courts have utilized Rule 48(b) to dismiss indictments where, as here, the Government has failed to abide by scheduling orders set by the court. *See United States v. Dobek*, 989 F. Supp. 2d 723, 731 (E.D. Wis. 2013) ("The U.S. Attorney, of course, violated the Court's scheduling order, which had been in place for nearly two

months, by appearing for trial unprepared; that violation, in itself, warrants dismissal."); *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000) ("[E]ither Rule 48(b) or the court's supervisory power could have provided a basis for the court's dismissal.").

The parallels of this case to *Dobek* are uncanny. In *Dobek*, the Government waited until the end of the statute of limitations period to indict the defendant, but then failed to take necessary steps to prosecute the case: the "U.S. Attorney did not provide the defense with discovery until ... more than a week after the arraignment" and "did not abide by the Court's trial scheduling order." *Dobek*, 989 F. Supp. 2d at 727. The *Dobek* court held the situation was of the Government's own making:

> All of this begs the question: if the U.S. Attorney's office in this district was not adequately prepared to follow through with making discovery available at the time of the arraignment, *even after having over eight months to prepare*, then why did they even present the charge to the grand jury so much earlier? The answer, of course, lies in the fact that the statute of limitations would have otherwise expired on the conduct charged against Mr. Dobek in Count One of the underlying indictment.
>
> That fact, in itself, also begs the question of why the U.S. Attorney did not bring the charges against Mr. Dobek in a more timely fashion so as to avoid any issues with the statute of limitations.
>
> *Id.* (emphasis in original).

Critically, the *Dobek* court found the Government, not the defendant, should bear the consequences of the Government's hasty indictment and lack of diligent preparation, dismissing the indictment in recognition of Mr. Dobek's right to a trial that is both "fair and speedy." *Id.* at 728 (dismissing indictment and noting that "clearly, the Assistant U.S. Attorneys assigned to prosecute this case are entirely at fault for the delay," and defendant's assertion of "his speedy trial rights ... weighs .... [in] in favor of dismissal").

The Third Circuit has also recognized that trial courts have discretion under their "supervisory powers" to dismiss indictments as a "remedy to Rule 16 discovery violations." *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 259 (3d Cir. 2005) (citing *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir.1991) ("[D]ismissal of an indictment because of outrageous government conduct may be predicated on ... the court's supervisory powers."). In *Fahie*, the Third Circuit explained that "it is especially important in the criminal context that a court applying sanctions for violation of Rule 16 carefully assess whether dismissal with prejudice is necessary to exact compliance with discovery obligations." *Id.* at 259. Thus, the Third Circuit concluded in *Fahie* that "to merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct." *Id.* "In particular ... a court must

look to both the need to undo prejudice resulting from a violation and the appropriate deterrent value of the sanction in each case." *Id.*

A with prejudice dismissal is the only sanction for the Government's discovery violations here. Again, there are just three options for the Court. Allow a constitutionally unfair trial to proceed on January 12. That would penalize Mr. Spotts. Grant the Government an adjournment, which the Court has already found "would be unduly prejudicial to Defendant." (ECF No. 22.) Or, dismiss the Indictment. A without prejudice dismissal would allow the Government to re-bring the prosecution when it *finally* has "prep[ared] for trial." That would reward the Government. It would also undo this Court's ruling that Mr. Spotts is entitled to a speedy trial. The only viable option is dismissal with prejudice.

A with prejudice dismissal honors Mr. Spotts' speedy trial rights and avoids the clear prejudice that would result if the dismissal were without prejudice; the Government could simply re-indict and take away the rights this Court held Mr. Spotts has. A with prejudice dismissal would also serve as an appropriate sanction for the Government's outrageous conduct in this case. The Government indicted Mr. Spotts after a five-year-long investigation, right as the statute of limitations was about to expire (or had expired). It then tried to manufacture complexity where there was none to hide from the Court that discovery could not be produced, and the Government was not ready for trial. It then failed to produce discovery and refused to respond to Mr. Spotts' request for *Brady* material. Then, after all discovery was supposed to be produced but wasn't, the Government sprung upon the Court and the defense that "[t]he Government *cannot complete compliance* with its discovery obligations until the process of reviewing potentially classified material is completed." (emphasis added). That is the type of repeated and willful misconduct that requires a with prejudice dismissal.

A with prejudice dismissal would also serve as an appropriate sanction for the Government's outrageous conduct generally. The Government admits that its modus operandi is to indict first and prepare later. If that is true, and we take Mr. Webman at his word, then no defendant can ever have a speedy trial in the District of New Jersey. The Speedy Trial Act is not the Government's to disregard. By dismissing this case with prejudice, the Court can send a clear and strong message to the U.S. Attorney's Office that its behavior must change. A with prejudice dismissal is thus appropriate to "undo [the] prejudice" to Mr. Spotts "resulting from [the Government's] violation," and to serve as a "deterrent" for future violations. *Fahie*, 419 F.3d at 259.

November 27, 2025
Page 12

## **CONCLUSION**

For these reasons, the Indictment against Mr. Spotts should be dismissed with prejudice.

Respectfully submitted,

*s/ Lee Vartan*

Lee Vartan
Member