# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp, U.S.D.J. |
| | : | |
| v. | : | Crim. No. 25-519 |
| | : | |
| JEFFREY SPOTTS | : | |
| | : | |

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

---

TODD BLANCHE
U.S. DEPUTY ATTORNEY GENERAL

PHILIP W. LAMPARELLO
SENIOR COUNSEL

On the Memorandum:

Aaron L. Webman
Kelly M. Lyons
Olta Bejleri
Assistant U.S. Attorneys

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..............................................................................ii

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND ............................................................................................. 2

ARGUMENT ................................................................................................ 13

I.    THE COURT SHOULD DENY AS MOOT DEFENDANT'S MOTION PERTAINING TO RULE 16 AND *BRADY* MATERIALS BECAUSE THE GOVERNMENT HAS COMPLIED WITH THE SCHEDULING ORDER..... 13

II.   THE COURT SHOULD DENY AS BASELESS DEFENDANT'S MOTION BECAUSE THE GOVERNMENT HAS COMPLIED, AND WILL CONTINUE TO COMPLY, WITH ITS *BRADY* OBLIGATIONS......................................... 15

III.  THE COURT SHOULD DENY AS MERITLESS DEFENDANT'S MOTION CONCERNING ANY POTENTIALLY CLASSIFIED MATERIALS BECAUSE AN ADJOURNMENT REQUEST IS NOT A BASIS FOR DISMISSAL. ....... 19

IV.   THE COURT SHOULD DENY AS BASELESS DEFENDANT'S MOTION BECAUSE DEFENDANT HAS NOT POINTED TO ANY GOVERNMENT MISCONDUCT OR DISCOVERY VIOLATION, MUCH LESS "CHRONIC" VIOLATIONS OR IN "BAD FAITH."............................................................. 23

CONCLUSION............................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*Brady v. Maryland,*
    373 U.S. 83 (1963) ............................................................................. *passim*

*Government of Virgin Islands v. Fahie,*
    419 F.3d 249 (3d Cir. 2005)................................................................ 26, 27

*United States v. Bert,*
    814 F.3d 70 (2d Cir. 2016)....................................................................... 22

*United States v. AU Optronics Corp.,*
    2011 WL 6778520 (N.D. Cal. Dec. 23, 2011) ......................................... 18

*United States v. Cianciola,*
    920 F.2d 1295 (6th Cir. 1990) ................................................................. 27

*United States v. Dobek,*
    989 F. Supp. 2d 723 (E.D. Wis. 2013)..................................................... 25

*United States v. Farese,*
    2023 WL 6795083 (D.N.J. Oct. 12, 2023) ......................................... 17, 18

*United States v. Gallo,*
    2024 WL 5087717 (D.N.J. Dec. 12, 2024)............................................... 24

*United States v. Goodson*
    204 F.3d 508 (4th Cir. 2000) ............................................................ 25, 26

*United States v. Jumaev,*
    20 F.4th 518 (10th Cir. 2021).................................................................. 22

*United States v. Mmahat,*
    106 F.3d 89 (5th Cir. 1997) ..................................................................... 17

*United States v. Mulderig,*
    120 F.3d 534 (5th Cir. 1997) ................................................................... 17

*United States v. Parks,*
    100 F.3d 1300 (7th Cir. 1996) ................................................................. 17

*United States v. Pelullo,*
    399 F.3d 197 (3d Cir. 2005)............................................................... 17, 18

*United States v. Pitts,*
  331 F.R.D. 199 (D.D.C. 2019) ..................................................................... 22

*United States v. Reddick,*
  2010 WL 5253527 (D.N.J. Dec. 17, 2010) ................................................... 24

*United States v. Restrepo,*
  930 F.2d 705 (9th Cir. 1991) ....................................................................... 27

*United States v. Shulick,*
  18 F.4th 91 (3d Cir. 2021) ..................................................................... 24, 27

*United States v. Skilling,*
  554 F.3d 529 (5th Cir. 2009) ....................................................................... 18

*United States v. Taylor,*
  487 U.S. 326 (1988) .............................................................................. 22, 23

*United States v. Weinstein,*
  2024 WL 4279006 (D.N.J. Sept. 24, 2024) ................................................. 17

*United States v. Woewiyu,*
  2018 WL 2304042 (E.D. Pa. May 21, 2018) ................................................ 22

## **Statutes**

15 U.S.C. § 78j(b) .................................................................................................. 6

15 U.S.C. § 78ff .................................................................................................... 6

18 U.S.C. app. 3 § 2 ........................................................................................... 21

18 U.S.C. § 3161(h)(7)(B)(ii) ............................................................................. 24

18 U.S.C. § 371 .................................................................................................... 5

18 U.S.C. § 1343 .................................................................................................. 5

18 U.S.C. § 1349 .................................................................................................. 5

## **Rules**

Fed. R. Crim. P. 16............................................................................... *passim*

Fed. R. Crim. P. 16(a)(1) ..................................................................................... 8

Fed. R. Crim. P. 48(b) ................................................................................. 23, 25

**<u>Regulation</u>**

17 C.F.R. §§ 240.10b-5 ................................................................................................... 6

## PRELIMINARY STATEMENT

Between January 2015 through March 2020, Defendant Jeffrey Spotts engaged in a complex scheme that defrauded dozens of victim investors in his investment firm out of approximately $294 million. Defendant repeatedly lied to investors about the basic nature of his investment strategy, claiming that robust risk controls safeguarded the investors' money from significant losses. In reality, the victim investors' money was allocated almost entirely to one trader, for whom Defendant's touted rules and controls did not apply, and who lost hundreds of millions of dollars in investors' money. Defendant and his co-conspirators went to great lengths to conceal the true nature of the funds and what actually happened to the investors' money, until the funds collapsed and the fraud was exposed. For his role in the fraud, Defendant is charged with securities fraud, wire fraud, and conspiracy.

Defendant moves to dismiss these charges with prejudice due to conjured discovery violations on the part of the Government. He brings his baseless motion after representing to the Court that he would not file any pretrial motions and after receiving millions of documents in discovery well in advance of the Government's discovery deadline. Indeed, he filed his motion just one week after that deadline—without even accessing (let alone reviewing) the Government's productions. Defendant, however, provides no basis for which the Indictment should be dismissed, as he has failed to show any discovery violation, much less a violation that would warrant dismissal of the Indictment. Absent any authority for the extraordinary remedy he requests, Defendant seeks dismissal based on (i) documents that he

1

admits he already received, (ii) demands the Government has no obligation to meet, (iii) the Government's unsuccessful, but entirely appropriate, request for a sixty-day adjournment, (iv) alleged discovery violations that have not occurred, and (v) baseless assertions of Government misconduct. Defendant's motion should be denied.

## BACKGROUND

***Defendant's Criminal Conduct.*** This case arises out of a complex fraud scheme orchestrated by Defendant, the founder and Chief Executive Officer of Prophecy Asset Management LP ("Prophecy"), his Chief Operating Officer and Chief Compliance Officer John Hughes,[1] and others. The scheme spanned years—from January 2015 through March 2020—and defrauded dozens of victim investors out of approximately $294 million.

Prophecy was an investment firm with approximately $360 million in investment funds. As Prophecy's founder and CEO, Defendant pitched investors on a "first-loss" investment strategy that purportedly mitigated risk by (among other things) (i) allocating funds to a diverse array of traders (called "sub-advisors"); (ii) requiring those sub-advisors to put up substantial cash collateral in exchange for access to investors' funds to offset investor losses; (iii) requiring the sub-advisors to replenish the cash collateral if the sub-advisors tapped into the collateral to pay for investors' losses; (iv) trading in mostly liquid markets where sub-advisors could quickly liquidate their positions without impacting prices; (v) ensuring transparency

---

[1]    Hughes pleaded guilty for his role in the conspiracy on November 21, 2023. *See United States v. Hughes*, Crim. No. 23-867 (MAS), Dkt. Nos. 3-5.

by monitoring the sub-advisors' trading in real-time on a proprietary trading platform; and (vi) shutting down the sub-advisors' ability to execute trades and taking control over the sub-advisors' trading positions. Defendant also told investors that, using this "first-loss" investment strategy, Prophecy had a track record of success and never had a down month. Defendant's statements, however, were all materially false and misleading.

Contrary to Spotts's representations, Prophecy allocated over 78% of its capital to the control of a single conspiring sub-advisor and allowed that sub-advisor to continue trading despite having accrued massive losses and without adequate collateral.[2]

**_Defendant's Coverup._** To hide the sub-advisor's allocation and losses from their victims and prospective investors, Defendant and his co-conspirators went to great lengths to cover up the fraud and the trading losses. For example, they entered into sham transactions to appear as though the conspiring sub-advisor was, in fact, replenishing his required cash collateral. They also fabricated non-cash collateral (such as stocks) to offset the conspiring sub-advisor's losses, without disclosing that information to Prophecy's investors. Rather than a track record of success, Prophecy suffered substantial trading losses, due mostly to the substantial trading losses of the conspiring sub-advisor. And despite experiencing substantial losses, Defendant never

---

[2]    The conspiring sub-advisor pleaded guilty for his role in the conspiracy on December 10, 2025. *See United States v. Kahn*, No. 25-700 (MAS), Dkt. Nos. 5-10.

suspended or terminated the conspiring sub-advisor's trading, as he told investors he would do. Nor did he disclose these facts to his victims.

*Defendant's Fraud Is Exposed.* In March 2020, Prophecy's auditor uncovered Prophecy's myriad misrepresentations and resigned. Around the same time, Prophecy's losses grew so extreme that they triggered margin calls. Prophecy was forced to suspend redemptions, and Defendant's fraud was exposed. Defendant and Prophecy failed to abide by their marketed investment strategy and risk protocols, and Prophecy lost more than $294 million in investor funds (of the $360 million it managed).

*The Government and Defendant Discussed This Case for Years Before It Was Indicted.* The Government promptly began investigating this massive fraud, and Defendant and the Government engaged in extensive pre-charge discussions in hopes of a resolution without the need for an indictment. At Defendant's request, the parties met on June 23, 2020; July 28, 2022; June 30, 2023; and January 15, 2025. During those meetings, Defendant presented his case to various members of the Office's leadership to convince the Government to decline charges. *See, e.g.*, Ex. A (June 30, 2023 email from defense counsel thanking the Government for their time and attaching presentation).[3] Defendant also submitted letters and declarations for the Government's consideration in further support of a declination. *See, e.g.*, Ex. B (March 24, 2025 email from defense counsel attaching letter and declaration); Ex. C (April 1, 2025 email from defense counsel attaching letter and declaration). The

---

[3]    Defense counsel's pre-Indictment emails are included without attachments.

Government evaluated each of those submissions. The Government's leadership made itself available every time Defendant requested. *See, e.g.*, Ex. D (September 15, 2023 email from defense counsel asking Government to "confirm that we will have time to discuss with you and, if necessary, those above before any charging decision is made," which the Government confirms); Ex. E (April 7, 2025 email from defense counsel stating, "I just want to reaffirm my request to meet with the US Attorney if a decision to charge is made").

As the statute of limitations drew near, Defendant continued to benefit from pre-charge discussions and entered into four tolling agreements: on January 28, 2025, May 17, 2025, June 23, 2025, and July 31, 2025. On July 17, 2025, defense counsel presented Defendant's case to the then-Interim U.S. Attorney. The Government refused to drop the investigation, so the parties scheduled a reverse proffer for August 29, 2025. Despite the plain text of the four tolling agreements Defendant signed and the Government's good faith in entering those agreements, Defendant informed the Government through counsel in mid-August that Defendant reserved the right to litigate the validity of the parties' tolling agreements. *See* Ex. F (August 2025 email chain between the Government and defense counsel). In response, the Government canceled the August 29 reverse proffer and presented the case to the grand jury.

***Defendant's Charges.*** On August 27, 2025, a grand jury in Newark returned an Indictment against Defendant, charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); wire fraud, in violation of 18 U.S.C. § 1343 (Count 2); conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371

(Count 3); and securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 (Count 4). *See* Dkt. No. 1. Defendant was arraigned before this Court on September 29, 2025. *See* Dkt. No. 5.

**Government's Motion for a Complex Case Order and Continuance.** On September 30, 2025, the Government moved for a complex case designation and a continuance. *See* Dkt. No. 8. In support of its motion, the Government highlighted (among other things) the complexity of Defendant's fraud and coverup, the anticipated production of more than 2.6 million documents and the inherent complications of voluminous discovery, and that "a portion of the material obtained in this investigation has been set aside from the investigative team for purposes of undergoing a filter review." *Id.* at 2, 4, 5. On the latter point, the Government noted that the "unsettled posture of this material, to which the prosecution team does not have access, is an added reason to designate this case as complex and justify an ends of justice continuance." *Id.* at 5. The Government proposed a schedule that would "provide the parties with a reasonable amount of time to finish the filter review process and (hopefully) resolve or litigate any remaining privilege issues over the material in dispute." *Id.* at 5-6.

In opposing the Government's motion, Defendant argued that (i) "[t]here is nothing 'so unusual or so complex' about voluminous e-discovery in this modern age. If discovery alone could make a case complex, then just about every federal white collar case would be designated complex"; (ii) "there is nothing especially complicated about the facts"; and (iii) "[t]here are no novel questions of law." Dkt. No. 12, at 3, 4,

6. To further persuade the Court that this case is not complex, during the hearing on the motion, defense counsel relayed his expertise with the facts of this case as he "live[d] through a multi-defendant arbitration that was covering the exact same territory, and we did the case in two weeks." *See* Dkt. No. 20 (October 29, 2025 Hearing Tr. at 14:23-15:3). And he represented that Defendant would not be filing any pretrial motions. *Id.* at 15:21-24.[4]

**_Defendant's January 12, 2026 Trial Date and Pretrial Deadlines._** The Court denied the Government's motion on October 29, 2025. *See id.* at 20:4-24:8. In doing so, the Court noted that "defense counsel has notably also represented on the record that they don't intend to file any pretrial motions" (*id.* at 22:19-21); and "the [G]overnment's concern about privileged documents causing a delay appears unfounded in light of defense counsel's representation that the parties only sporadically discussed a single document with the filter attorney" (*id.* at 23:2-5). The Court then scheduled Defendant's trial for January 12, 2026. *Id.* at 23:24-25. Following the parties' meet-and-confer, the Court also entered the parties' proposed scheduling order. *See* Dkt. No. 19. In doing so, the Court again noted Defendant's representation "on the record that he waived his right to file pretrial motions." *Id.* at 4 n.1. In that order, the Court required the Government to produce:

---

[4]    During the hearing, Defendant also personally waived his right to challenge Alina Habba's authority and acknowledged his understanding that he would not be permitted to later retract his decision or raise the issue on appeal or any collateral attack. *See* Dkt. No. 20 (October 29, 2025 Hearing Tr. at 2:15-4:15).

- "substantially all discovery required by Federal Rule of Criminal Procedure 16(a)(1) on or before November 19, 2025";

- "exculpatory evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, on or before November 19, 2025";

- "[e]xculpatory evidence that becomes known to the Government after that date shall be disclosed reasonably promptly after becoming known to the Government"; and

- "all material to be disclosed under *Giglio* . . . [and] the Jencks Act . . . on or before December 23, 2025."

*Id.* at 1-3.

***Defendant Receives Timely Rule 16 and* Brady *Discovery.*** The Government began preparing materials for production to Defendant before his arraignment. Given the volume of the documents, the Government requested that the Department of Justice's Litigation Technology Service Center in South Carolina ("LTSC") begin preparing the first productions. Notably, the Government did so before Defendant declined to sign a continuance and before the Court denied the Government's motion for a complex case order and continuance. When the Court denied the Government's motion and set the January 12 trial date, the Government committed additional resources to ensure its readiness for trial and compliance with the Court's scheduling order.

So, on November 4, 2025, the Government delivered the first hard drive of Defendant's Rule 16 and *Brady* materials in the prosecution team's possession—two

weeks before the November 19 discovery deadline. On November 13, 2025, the Government delivered the second hard drive of Defendant's Rule 16 and *Brady* materials in the prosecution team's possession—nearly a week before the November 19 discovery deadline. Both hard drives, which comprised the Government's substantial completion of Defendant's Rule 16 and *Brady* discovery in the prosecution team's possession, were prepared by the LTSC in the same manner and applied the same encryption standards that LTSC applies to countless productions nationwide. Despite receiving the first production more than two weeks before the Government's discovery deadline and the second production nearly a week before the Government's discovery deadline, Defendant did not raise any issues with the production until the November 19 discovery deadline. That afternoon, Defendant's counsel informed the Government for the first time that they had been unable to open a hard drive that had been in their possession for two weeks. *See* Ex. G (November 19, 2025 email from defense counsel attaching letter).

The Government immediately took steps to assist defense counsel. *See* Ex. H (November 19, 2025 email from the Government). The Government arranged a call between all the attorneys of record, defense counsel's e-discovery vendor, and the Government's eLitigation personnel—including the individual responsible for the productions and the group supervisor. The Government permitted defense counsel and their vendor to ask questions about the production (which was produced consistent with LTSC's routine procedures). The technical experts on both sides agreed on the nature of the issue (which related to the encryption method) and the

speediest resolution. Consistent with this agreement, Defendant's vendor returned the two hard drives to the Government, and the Government immediately began copying the productions onto new hard drives with a different form of encryption. To expedite the process, the Government offered to hand deliver the new hard drives when they were ready on November 25, but defense counsel requested that the Government send them to their vendor instead. The Government complied and sent them via overnight courier to defense counsel's e-discovery vendor in Washington, D.C., who received them on November 26—seven days after defense counsel raised the issue.[5] *See* Ex. I (November 2025 email chain between the Government and defense counsel).

***Defendant Receives Early Jencks Act Material and Other Voluntary Discovery.*** In addition to producing Rule 16 and *Brady* material in the prosecution team's possession, the Government disclosed Jencks Act material for testifying and non-testifying witnesses on November 18, 2025—five weeks before its December 23 deadline. Even more, Defendant requested the production of materials from a related case that was closed years ago involving a separate, but related fraud. The Government sought and obtained a waiver of the attorney-client privilege from that separate defendant and voluntarily produced all materials in its possession related to the separate case.

---

[5]    On December 4, 2025, the Government also produced via a cloud-based file sharing platform twenty-one recordings shortly after discovering that they were inadvertently omitted from an earlier production.

***Defendant Requests the Identification of Specific* Brady *Material.*** On November 4, 2025, before receiving or reviewing any of the Government's productions, Defendant demanded production of twenty-one categories of material that counsel considered to be either exculpatory or otherwise discoverable under Rule 16. *See* Ex. J (November 4, 2025 email from defense counsel attaching letter). On November 19, 2025—in the same letter in which defense counsel alerted the Government to their difficulties with the hard drives—Defendant demanded, for the first time, that the Government go an extra step and "identify all *Brady* material contained in the Government's productions." *See* Ex. G. In response, the Government explained that it is not the Government's role to guess and identify what the defense may regard as *Brady* material, but offered to discuss how the Government could help defense counsel identify the material in which it was interested. *See* Exs. H & I. Defense counsel did not take the Government up on that offer.

***Government Learns of Potentially Classified Information in Discovery Materials.*** On Friday, November 21, 2025, the Government learned that material not yet in the prosecution team's possession, but which the Government expected would be produced to Defendant, might contain classified information.[6] The Government immediately called the Court to notify it of an anticipated *ex parte* submission and took steps to understand the nature of that material, the process of

---

[6] At this time, the Government already was aware of classified material potentially discoverable in this case, that was not in the prosecution team's possession. The Government was arranging to review that material, so it could determine if it was in fact discoverable and, if necessary, begin the process required under the Classified Information Procedures Act ("CIPA").

review, and (if applicable) the plan for disclosure. In consultation with the Office's National Security Unit and the Department of Justice's National Security Division ("NSD"), on early Monday, November 24, 2025, the Government submitted a letter to the Court *ex parte* and under seal, explaining the issue and seeking a status conference to discuss the need for a trial adjournment. On Tuesday, November 25, 2025, the Court declined to hold a status conference or adjourn the trial. The Court further stated that, should the Government seek a formal adjournment of the trial date, it must file a request stating so and notify Defendant's counsel. Consistent with the Court's directive, the Government publicly filed a letter disclosing the issue and seeking a sixty-day adjournment of the trial. *See* Dkt. No. 21. The next day, on November 26, 2025, the Court denied the Government's adjournment request. *See* Dkt. No. 22. The following day, on November 27, 2025, Defendant filed his motion to dismiss. *See* Dkt. No. 23 ("Motion").

***Defendant's Motion to Dismiss.*** Despite representing that he would not file pretrial motions and without reaching out to the Government for answers to any of his questions, Defendant moves to dismiss the Indictment with prejudice. *See* Motion. In the Motion, Defendant seeks dismissal based on documents that he admits he already received, obligations the Government does not have, the Government's unsuccessful (but proper) request for a sixty-day adjournment, alleged discovery violations that have not occurred, and unfounded assertions of Government misconduct. *See id.* On December 4, 2025, the Court adjourned the trial and all pretrial deadlines pending adjudication of Defendant's Motion. *See* Dkt. Nos. 24 &

25. The Government's opposition was set for December 15, 2025, and Defendant's reply was set for December 22, 2025. *See* Dkt. No. 24.

## ARGUMENT

Defendant raises several meritless and unsupported grounds for dismissal. *First*, he complains of his temporary inability to access the "bulk" of the Government's discovery, but he admits that he received the discovery to which he is entitled before he filed this Motion. *Second*, he seeks to conjure up new *Brady*-related obligations on the Government, yet he ignores that the burden is now on him to exercise reasonable diligence in reviewing the Government's productions. *Third*, he seeks dismissal based on newly discovered potentially classified material that may contain discoverable information, but no discovery violation related to this material actually has occurred. *Finally*, he alleges "outrageous conduct" and "repeated and willful misconduct" without any basis in law or fact. As explained below, the Government has gone above and beyond to exceed its discovery obligations and prepare its case for trial. Defendant's Motion should be denied.

### I.   THE COURT SHOULD DENY AS MOOT DEFENDANT'S MOTION PERTAINING TO RULE 16 AND *BRADY* MATERIALS BECAUSE THE GOVERNMENT HAS COMPLIED WITH THE SCHEDULING ORDER.

Defendant seeks dismissal of the Indictment with prejudice because he could not access the materials in the Government's November 4 and November 13 hard drives for one week. *See* Motion at 1, 2, 5, 6, 11. Notwithstanding the sensationalized arguments in his Motion, Defendant ultimately admits that the issue is moot because

he now can access the discovery. *See id.* at 5 ("It was only yesterday, November 26, that the defense received the discovery required by the Court's order.").

As noted above, the Government produced the two hard drives consistent with the LTSC's routine production protocol. In other words, the Government had no reason to believe that Defendant or his vendor would have trouble accessing the documents. Once Defendant alerted the Government to the issues with the hard drives on the afternoon of the discovery deadline, the Government instantly began working towards a resolution. The Government arranged a call between the attorneys and the parties' eDiscovery personnel, copied the materials into new hard drives with a different encryption method, offered to hand deliver the hard drives in the interest of expediency, and overnighted them at Defendant's request to his vendor in Washington, D.C. In all, the issue relating to both hard drives was resolved within one week.

Any frustration Defendant asserts concerning his one-week delayed access to the "bulk" of the discovery is a circumstance of his own making. Defendant received the first hard drive at issue on November 4—fifteen days before the November 19 discovery deadline. Defendant received the second hard drive at issue on November 13—six days before the November 19 discovery deadline. Yet Defendant did not raise a single issue with the productions for weeks (until the afternoon of the discovery deadline). Had Defendant raised the issue when he received the first hard drive, the Government would have immediately provided a new hard drive in the preferred format and, importantly, would have sent the second hard drive in Defendant's

preferred format at the outset. Such notice would have spared the parties substantial efforts and allowed Defendant quicker access to the materials.

The Government has done no wrong here and certainly nothing to warrant dismissing the Indictment. On the contrary, the Government substantially completed its production of Rule 16 and *Brady* materials well ahead of the November 19 deadline. It reproduced those materials again in Defendant's preferred format. And, as Defendant acknowledges, he has already received the materials. This issue is now moot, and Defendant's Motion on this ground should be denied.

## II.   THE COURT SHOULD DENY AS BASELESS DEFENDANT'S MOTION BECAUSE THE GOVERNMENT HAS COMPLIED, AND WILL CONTINUE TO COMPLY, WITH ITS *BRADY* OBLIGATIONS.

Defendant's vague claim that the Government has somehow run afoul of its *Brady* obligations by failing to identify for Defendant every potentially exculpatory piece of evidence in its discovery productions is baseless and contrary to well-established precedent. The Government is aware of its *Brady* obligations and has complied and will continue to comply with them. As noted above, the Government substantially completed its production of Rule 16 and *Brady* materials in the prosecution team's possession on November 4 and November 13. It then reproduced those materials consistent with Defendant's preferred encryption method on November 26. Defendant acknowledges receiving them the day before he filed the instant Motion, rendering this request also moot.

Although Defendant makes no specific requests in his Motion (and seemingly ignores the materials he received the day before he filed it), the Government

nevertheless addresses Defendant's *Brady*-related demands outlined in his November 4 and November 19 letters, attached respectively as Exhibits G and J. In the first letter, Defendant lists twenty-one categories of documents Defendant considers to be either exculpatory or otherwise discoverable under Rule 16. *See* Ex. J, Attachment at 1-3. To the extent Defendant has questions about the location of specific materials in the Government's productions after he uploads the searchable discovery onto a review platform, the Government already has offered to assist Defendant and remains willing to help defense counsel locate those materials.

In the second letter, Defendant declared—on the day of the Government's discovery deadline and without reviewing a single document—that "the Government has failed to satisfy its obligations." *See* Ex. G, Attachment at 1. And despite arguing for the simplicity of this case, that "[t]here is nothing 'so unusual or so complex' about voluminous e-discovery in this modern age" and that "there is nothing especially complicated about the facts," *see* Dkt. No. 12, at 3, 4, 6, Defendant took issue with the fact that the Government "produced over 7 million pages of documents to date" (which Defendant knew to expect at the time of the hearing on the complex case motion) and demanded the Government "identify all *Brady* material contained in the Government's productions." Ex. G, Attachment at 1.

That Defendant must review millions of pages of documents ahead of his January trial does not impose new obligations on the Government.[7] This is yet

_____

[7]    The Government notes that Defendant's January trial is adjourned, so Defendant will now have additional time to review the Government's production.

another circumstance of Defendant's own making. The law is clear: the Government's obligation to produce exculpatory evidence does not include an obligation to point a defendant to every piece of evidence that may be consistent with one of his defense theories. *See United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005). In other words, though *Brady* and its progeny require the Government to make exculpatory evidence in its possession available to a defendant, they "impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." *Id.* (citing *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997); *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996); and *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997)); *see also United States v. Weinstein*, No. 24-128 (MAS), 2024 WL 4279006, at *9 (D.N.J. Sept. 24, 2024) ("In short, *Brady*, does not require the Government to identify the exculpatory materials within the discovery it has already provided."); *United States v. Farese*, No. 21-877 (KM), 2023 WL 6795083, at *2 (D.N.J. Oct. 12, 2023) ("[A]bsent . . . bad faith or concealment, there is no duty to help the defense and analyze which items may be considered exculpatory.").

*Pelullo*, a binding case that Defendant nowhere mentions, is instructive. There, an *incarcerated* defendant claimed that the Government violated its *Brady* obligations by making a *warehouse* of documents, which consisted of roughly 160 boxes and 36 file cabinets, available to the defense. *Pelullo*, 399 F.3d at 212-13, nn.15 & 16 (emphasis added). The Third Circuit squarely rejected that claim, stating that *Brady* did not obligate the Government to do anything other than "ma[ke] the

warehouse documents available to the defense, without specifying any particular documents that were helpful to the defense." *Id.* at 212-13 (emphasis added). Rather, the court found that "the burden is on the defendant to exercise reasonable diligence." *Id.* at 213. This burden does not shift simply because of a large volume of documents. *Farese*, 2023 WL 6795083, at *2 (noting that the blackletter rule has been applied in one case involving "several hundred million pages of discovery" and another involving "37 million pages") (citing *United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009) and *United States v. AU Optronics Corp.*, Crim. No. 09-0110, 2011 WL 6778520, at *1 (N.D. Cal. Dec. 23, 2011)).

Identifying defense-friendly material within the Government's disclosures is "ordinarily the job of defense counsel." *Farese*, 2023 WL 6795083, at *2. That is even truer in this case, where defense counsel "live[d] through a multi-defendant arbitration that was covering the exact same territory" (*see* Dkt. No. 20 (October 29, 2025 Hearing Tr. at 14:23-15:3)), and thus has already litigated the facts, the law, and any potential defense. And there is no allegation of bad faith or concealment here; to the contrary, the Government has acted with maximum promptness to meet its discovery obligations. Indeed, to ensure Defendant's access to any perceived *Brady* material, the Government (i) negotiated with the attorney of another defendant and voluntarily produced (at Defendant's request) the entire file of the now-closed case pertaining to that defendant; (ii) produced reports of all testifying and non-testifying witness interviews five weeks before the parties' agreed-upon Jencks Act deadline; (iii) offered to assist defense counsel to locate requested documents, which defense

counsel ignored; (iv) made members of its eLitigation team (including a supervisor) available to Defendant to discuss issues with processing the productions; and (v) offered to hand deliver productions to Defendant to avoid delay. In short, the Government has gone above and beyond to ensure that Defendant has access to any document he deems material to his defense. The Government's conduct reflects a level of good faith well beyond that required by the discovery rules, and Defendant's Motion should be denied.

### III.    THE COURT SHOULD DENY AS MERITLESS DEFENDANT'S MOTION CONCERNING ANY POTENTIALLY CLASSIFIED MATERIALS BECAUSE AN ADJOURNMENT REQUEST IS NOT A BASIS FOR DISMISSAL.

Defendant next argues that the Indictment should be dismissed because the Government requested a sixty-day adjournment to comply with both its discovery obligations and statutorily required procedures in connection with reviewing potentially classified material that may be discoverable in this case. *See* Motion at 1, 2, 4, 5, 6, 7, 8, 9. Defendant's argument is meritless, as he failed to allege any discovery violation regarding this material. At best, his argument is premature, since the Government does not yet know whether the materials it learned of on November 21, 2025 are indeed classified and to what extent, if any, they contain discoverable information under Rule 16 or otherwise. Upon learning of the existence of these documents, the Government did exactly what is required: it immediately alerted the Court and simply requested more time to make those determinations in a manner that complies with its statutorily mandated obligations, including, but not limited to, the CIPA. None of these appropriate acts require dismissal.

19

On Friday, November 21, 2025, six days before Defendant's Motion, the prosecution team[8] learned of potentially classified materials in documents it intended to produce to Defendant but to which it did not—and still does not—have access. The Government immediately called the Court to notify it of an anticipated *ex parte* submission and took steps to understand the nature of that material, the process of review, and (if applicable) the plan for disclosure. In consultation with the Office's National Security Unit and the NSD, on early Monday, November 24, 2025, the Government submitted a letter to the Court *ex parte* and under seal, explaining the issue and seeking a status conference to discuss the need for a trial adjournment. On Tuesday, November 25, 2025, the Court declined to hold a status conference or adjourn the trial. The Court further stated that, should the Government seek a formal adjournment of the trial date, it must file a request stating so and notify Defendant's counsel. Consistent with the Court's directive, the Government filed a letter on the docket the same day. *See* Dkt. No. 21.

As noted in the Government's November 25 letter, the Government must comply with specific procedural requirements for reviewing and, to the extent production is necessary and appropriate, producing potentially classified material. *See id.* The Government already was in the process of determining whether that process would be necessary for other materials potentially related to this case. For reasons outside of the prosecution team's control, these procedures are often lengthy,

---

[8]    Defendant is incorrect that turnover in the U.S. Attorney's Office is the reason why the prosecution team did not learn of this potentially classified material until November 21. Prior members of the prosecution team were not aware of this material.

complicated, and require input from other government agencies. And because the Government cannot confirm compliance with its discovery obligations until these procedures are complete, after it learned of these new materials, the Government immediately notified the Court and requested more time to comply with the required procedures. Since the Court denied the Government's adjournment request, the prosecution team is making every effort to timely obtain, review, and (if required) produce the potentially classified materials, following the statutorily mandated procedures, before Defendant's trial.[9]

The Government has produced substantially all Rule 16 discovery and *Brady* materials in its possession. Indeed, Defendant admits several times in his Motion that the Government already has produced "the bulk" of Rule 16 discovery. *See* Motion at 2, 3, 5, 6. And it is not yet clear to what extent the potentially classified material is discoverable in this case under Rule 16 or otherwise. To the extent there is discoverable material in them, the Government is diligently working to produce those materials in advance of trial pursuant to its various obligations and in accordance with the scheduling order. Accordingly, any contention that the Government has committed a discovery violation in connection with these materials is premature at best, and there is no basis to dismiss the Indictment because of the inability to produce these materials at this time.

---

[9]    As part of this effort, the Government expects to file a motion in short order asking the Court to set a schedule for CIPA proceedings. *See* 18 U.S.C. app. 3 § 2.

In any event, the proper remedy to ensure the Government's compliance with its discovery obligations and CIPA requirements is a brief adjournment—not dismissal. Courts have found that much longer delays than the Government's proposed sixty days in the discovery process are reasonable, due to the Government's need to comply with "unavoidable" CIPA requirements. *See, e.g.*, *United States v. Jumaev*, 20 F.4th 518, 534 (10th Cir. 2021) (holding lengthy, years-long period of discovery justified where the court's and the parties' obligations to comply with CIPA "significantly complicated the discovery process" in ways that were "unavoidable"); *United States v. Woewiyu*, No. 14-50, 2018 WL 2304042, at *9 (E.D. Pa. May 21, 2018) ("Based on the Government's arduous investigation into classified information, and the strong likelihood that the Court would need to conduct an independent review of the classified documents, the Court realized that the Open-Ended 'Ends of Justice' Continuance would have to be quite lengthy."). Defendant has failed to state any discovery violation, let alone a violation meriting dismissal of the Indictment. His Motion should thus be denied.[10]

---

[10]    None of Defendant's cited authority compels a different result. In *United States v. Pitts*, the *Government* sought to dismiss the indictment following several errors by the Government. *See* 331 F.R.D. 199, 201 (D.D.C. 2019) (cited in Motion at 7). In *United States v. Bert*, the *parties agreed* that a violation of the Speedy Trial Act had occurred after months of inactivity, and the Second Circuit remanded for further consideration the district court's dismissal of the indictment. *See* 814 F.3d 70, 78 (2d Cir. 2016) (cited in Motion at 7). And in *United States v. Taylor*, the Supreme Court held that the district court *abused its discretion* in dismissing an indictment with prejudice. *See* 487 U.S. 326, 344 (1988) (cited in Motion at 7). Although the Court noted, as Defendant points out, that "a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue," *id.* at 338, no such neglect occurred here. Defendant and the Government engaged in years-long pre-charge negotiations and the parties entered several tolling

### IV.    THE COURT SHOULD DENY AS BASELESS DEFENDANT'S MOTION BECAUSE DEFENDANT HAS NOT POINTED TO ANY GOVERNMENT MISCONDUCT OR DISCOVERY VIOLATION, MUCH LESS "CHRONIC" VIOLATIONS OR IN "BAD FAITH."

In a last-ditch effort, Defendant moves to dismiss the Indictment under Federal Rule of Criminal Procedure 48(b) and the Court's supervisory authority. *See* Motion at 9-11. In support, he alleges "outrageous conduct" and "repeated and willful misconduct" based partly on the fact that the Government (i) engaged in good faith pre-charge negotiations and charged Defendant only after those negotiations failed; and (ii) moved for a complex case order. *Id.* at 11.[11]

Regarding Defendant's assertion that the Government indicted Defendant "after a five-year-long investigation, right as the statute of limitations was about to expire (or had expired)," Defendant conveniently omits that the Government first had to investigate Defendant's many complex crimes (which took time) and then engaged in good faith pre-charge negotiations *at Defendant's request* in hopes of reaching a resolution (as it did with Defendant's co-conspirators). That is why it met with defense counsel on several occasions, permitted defense counsel to present

---

agreements to accommodate their negotiations. When those negotiations failed in mid-August, the Government properly presented the case to a grand jury in late-August. Defendant sought a speedy trial, as he is entitled, and trial was set for the following January. The trial was then adjourned due to Defendant's Motion. Defendant's cherry-picked mischaracterizations notwithstanding, there has been no neglect on the part of the Government.

[11]    Defendant's arguments concerning the hard drives, *Brady* material, and potentially classified documents were repeated throughout his Motion and are discussed at length above.

Defendant's case to its leadership each time he requested, evaluated materials defense counsel submitted, and entered into multiple tolling agreements.

Defendant's unsupported suggestion that the Government's motion for a complex case order demonstrates "repeated and willful misconduct" is, simply put, wholly without merit.[12] Motions for complex case orders are common and specifically authorized by the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii). Courts routinely grant such motions under similar facts, including over defendants' objections. *See, e.g.*, *United States v. Shulick*, 18 F.4th 91, 100 (3d Cir. 2021) (finding there was ample evidence to support that a single-defendant embezzlement case was complex where the prosecution stemmed from a multi-year investigation involving millions of pages of documents); *United States v. Gallo*, No. 24-712 (BRM), 2024 WL 5087717, at *3 (D.N.J. Dec. 12, 2024) ("Given the nature of the claims, the complexity of the investigation, the estimated volume of discovery, and the anticipated pretrial motions, the Court finds it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself and thus designates this case as complex."); *United States v. Reddick*, No. 09-2001 (JS), 2010 WL 5253527, at *3 (D.N.J. Dec. 17, 2010)

---

[12]    Defendant makes a little too much of the Government's statement, which Defendant repeats several times in his Motion, that the Government was not prepared to start trial on the day the Indictment was filed. Of course that is true: when the Indictment was filed, the prosecution team, like any rational prosecutor, did not have its exhibit lists, jury instructions, *voir dire* questions, witness lists, and other trial materials ready to go. The parties' scheduling order recognizes that the parties needed time to prepare for trial. And the Speedy Trial Act itself also recognizes that, as it requires the Government to be ready for trial not on the date the Indictment is filed but 70 days after the Indictment is filed—a period that is almost always extended.

(rejecting defendant's argument that the case should not have been designated complex because it only involved one defendant, there was no complicated series of charges, there was no voluminous or complicated discovery, and defendant's competence was not at issue). Defendant's suggestion that the mere act of filing a common, legally authorized motion itself constituted misconduct is baseless.

In support of dismissing the charges related to his $294 million fraud under Rule 48(b), Defendant relies on *United States v. Dobek*—a 2013 decision from the Eastern District of Wisconsin. *See* 989 F. Supp. 2d 723, 725-26 (E.D. Wis. 2013) (cited in Motion at 9-10). Defendant's reliance, however, is misplaced. The court in *Dobek* dismissed the indictment under Rule 48(b) because the Government (i) failed to return the defendant to the charging district "in a timely manner . . . [which] caused the indictment to be left dangling for ten months"; (ii) failed to timely produce discovery to the defendant at arraignment despite the fact that the indictment had already been pending for eight months; (iii) failed to anticipate the issues in its case or failed to timely communicate those issues to the court and defense counsel; (iv) informed the court that it planned to seek a superseding indictment less than a week before trial, which the court suspected to be a "delay tactic"; and (v) subsequently filed a motion to adjourn the trial due to issues with witness unavailability only days before the trial was set to begin. *See id.* at 728-29, 732-33.[13]

---

[13]    Defendant also cites *United States v. Goodson* for the proposition that "[e]ither Rule 48(b) or the court's supervisory power could have provided a basis for the court's dismissal." 204 F.3d 508, 513 (4th Cir. 2000) (cited in Motion at 10). There, the Government had no objection to dismissing the indictment, and the Seventh Circuit held that the district court abused its discretion in dismissing the indictment with

By contrast, the procedural background in this case highlights the Government's repeated and substantial efforts to comply with its discovery obligations in a timely and comprehensive manner. The Government already has produced more than approximately 3 million documents, including substantially all Rule 16 discovery and any potentially *Brady* material in the prosecution team's possession, all Jencks Act material weeks ahead of the agreed-upon deadline, and other documents at Defendant's request. Upon learning of the existence of potentially classified materials on November 21, the prosecution team immediately informed the Court and defense counsel and began making arrangements to obtain and review those materials. Despite the inflammatory language in Defendant's motion, there have been no delay tactics nor lack of diligent preparation—the Government's letters and in-court statements simply reflect candor with the Court.

To request dismissal based on the Court's supervisory authority, Defendant relies on two cases, neither of which supports his desired outcome. He relies on *Government of Virgin Islands v. Fahie* for the principle that courts have discretion under their "'supervisory powers' to dismiss indictments as a 'remedy to Rule 16 discovery violations.'" Motion at 10 (citing 419 F.3d 249, 259 (3d Cir. 2005)). But the Third Circuit there found that the district court had abused its discretion in dismissing the indictment with prejudice for Rule 16 violations where there had been no showing of "willful government misconduct." *Fahie*, 419 F.3d at 259. He also relies

---

prejudice and remanded with instructions to dismiss without prejudice. *Id.* at 513, 516. *Goodson* therefore does not help Defendant.

on *United States v. Restrepo* for the proposition that "[d]ismissal of an indictment because of outrageous government conduct may be predicated on . . . the court's supervisory powers." Motion at 10 (citing 930 F.2d 705, 712 (9th Cir. 1991)). Like the Third Circuit in *Fahie*, the Ninth Circuit in *Restrepo* found that dismissal was inappropriate and affirmed the district court's refusal to grant the dismissal. *See* 930 F.2d at 707 (rejecting defendant's "claims that the district court erred in refusing to dismiss the indictment because of outrageous government conduct"). It is telling that none of Defendant's cited authority supports his requested relief. That is because the facts here show that the Government is diligently working to produce discovery and prepare this case for trial. Defendant's invented theories do not suggest otherwise, and his Motion should be denied.

Finally, Defendant mentions the Government's alleged "lack of diligent preparation" no less than seven times. *See* Motion at 3, 4, 5, 9, 10. Defendant's insistence, however, does not make it so. The Government is diligently preparing for trial and will be ready for trial as soon as the potentially classified materials issue is resolved. The Third Circuit has held that a discovery violation does not rise to the level of a "lack of diligent preparation" unless it was in "bad faith" or "chronic." *United States v. Shulick*, 18 F.4th 91, 101 (3d Cir. 2021); *see also United States v. Cianciola*, 920 F.2d 1295, 1300-01 (6th Cir. 1990) (affirming district court's excusal of delay caused by prosecutor's inadvertent failure to mail a discovery response because it was neither in bad faith nor chronic). Nothing here comes close. As discussed above, Defendant has failed to identify any discovery violation at all, let alone chronic

27

violations or violations committed in bad faith. The Court should deny Defendant's Motion.

**<u>CONCLUSION</u>**

For the reasons above, the Government respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted,

TODD BLANCHE
U.S. DEPUTY ATTORNEY GENERAL

PHILIP W. LAMPARELLO
SENIOR COUNSEL


*s/ Aaron L. Webman*
_____

By:    Aaron L. Webman
       Kelly M. Lyons
       Olta Bejleri
       Assistant U.S. Attorneys


Dated:  December 15, 2025